# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

REBECCA BOUTWELL,

    PLAINTIFF,

vs.                                          CASE NO. CV 08-J-631-NE

FEDERAL-MOGUL POWERTRAIN,
INC., and KELLY SERVICES, INC.,

    DEFENDANTS.

## **MEMORANDUM OPINION**

Pending before the court are the defendant Federal-Mogul Powertrain, Inc.'s motion for summary judgment (doc. 25), evidence in support of said motion, and memorandum in support of its motion (docs. 26 and 31), and defendant Kelly Services, Inc.'s motion for summary judgment (doc. 29), evidence in support of said motion, and memorandum in support of its motion (doc. 30). The plaintiff filed responses and evidence in opposition to each of the defendants' motions (docs. 32-35), and the defendants thereafter filed replies (docs. 36 and 37). Having considered the pleadings, evidence and respective memoranda of the parties, the court finds as follows:

## I. Factual Background

Plaintiff sued defendant Kelly Services, Inc. ("Kelly"), a temporary employment agency and Federal-Mogul Powertrain, Inc. ("Federal-Mogul"), the employer to whom she was assigned, for retaliation in violation of Alabama Code § 12-16-8.1(a), which prohibits termination of an employee due to absence from work because of jury service, and for intentional infliction of emotional distress against each of the defendants. The plaintiff asserts this court had jurisdiction based on diversity, pursuant to 28 U.S.C. § 1332.

In the light most favorable to the plaintiff, the facts of this case are as follows:

The plaintiff was employed by defendant Kelly, a temporary employment agency. Declaration of Brenda Armour[1] (doc. 30), ¶ 1; Armour depo. at 24; plaintiff depo. at 96. In August 2007 the plaintiff was hired through Kelly to work for Federal-Mogul. Plaintiff depo. at 32, 39. She remained an employee of Kelly and was paid by Kelly during this time period. *Id.*, at 44.

In November 2007 the plaintiff was summoned for jury duty in Morgan County, Alabama, with service to begin on December 10, 2007. Plaintiff depo. at 53-54. She provided a copy of the summons to her supervisor at Federal-Mogul, Jim Grinage. Affidavit of Jim Grinage (doc. 28), ¶ 8; plaintiff depo. at 55; Grinage depo.

---

[1] Brenda Armour was a senior staffing supervisor for defendant Kelly at the relevant time. Armour depo. at 12.

at 41.  Because she worked the 11 p.m. to 7 a.m. shift, Grinage allowed the plaintiff to be off work the night of December 9, 2007.  Affidavit of Grinage, ¶ 8.  Grinage provided her a slip of paper with his cell phone number on it to call and let him know if she was selected for the jury.  Grinage depo. at 34-35, 42.  He specifically reminded her to call in every day she would be out of work.  *Id.*, at 42; plaintiff depo. at 56.  The plaintiff was selected to serve on a jury.  However, she did not call Grinage's cell phone because she lost the phone number.  Plaintiff depo. at 46, 63, 92-93.

Federal-Mogul's employment policy requires employees to call in prior to the start of their shift each day they will be absent.  Townsend depo. at 22-24.[2]  Despite the specific requirement she call her supervisor's cell phone prior to the start of each shift she will be absent, the plaintiff did not do so on December  10th, 11th or 12th.  Affidavit of Jim Grinage (doc. 28), ¶ 10; see also exhibit 3 to Grinage depo., at 0008; Butler II depo. at 15, 16-17; Grinage depo. at 33.

According to the plaintiff, she called in on December 10, 2007, sometime in the evening.  Plaintiff depo. at 57-65.  The plaintiff's home phone records reflect that she made calls to the main number.[3]  Plaintiff depo. at 59-60; exhibit 20 to plaintiff

---

[2]Donna Townsend is a personal administrator for Federal-Mogul.

[3]The value of the phone records as evidence is negligible, at best.  The plaintiff explained that the dates and times reflected on her phone bill are inaccurate because she uses a voice-over-Internet service whose server is in another country.  Plaintiff depo. at 58-59.  The bill reflects that she dialed the PFTE call-in number three times within the span of ten minutes on December 11, 2007.  Plaintiff depo. at 60; exhibit 20 to plaintiff depo.  By plaintiff's testimony, this cannot be

depo., at 0008. She left a message that she had lost Grinage's new cell number and was trying to reach him because she had been picked for a jury. Plaintiff depo. at 63-65, 93. She called again on December 11, 2007, from her cell phone and left another message. *Id.* at 67-69. On December 12, the plaintiff got the wrong number and left no message. *Id*. at 74.

Troy Butler, the Human Resources manager whose job includes checking messages on the main line, did not get any messages from the plaintiff on any of those dates. Affidavit of Butler (doc. 27), ¶ 10; Butler depo. at 20. Butler checks that number for voice mail daily. *Id.* at 17.

Because she did not call his cell phone, Grinage thought plaintiff had quit after several days. Grinage depo. at 46. Grinage notified the human resources department that he needed a replacement employee due to the plaintiff's failure to call or show up for work. *Id*. at 40-41. Butler made the decision to end plaintiff's assignment with Federal-Mogul on December 13 because of the "no call no show" for three days. Butler depo. at 24-25, 32.

According to the plaintiff, she could call either the PTFE call-in line or Grinage's cell phone. Plaintiff depo. at 46. She got the PTFE call-in number off the employee bulletin board where it said "Call-ins must call this number." *Id.* at 60.

---

taken to mean that the call was actually made on December 11, 2007, because of the server's whereabouts. Plaintiff depo. at 59.

According to Butler, the main line is not an approved method of contacting a supervisor. Butler II depo. at 17-18. According to Townsend, employees are supposed to call their supervisors' cell phones if they are going to be out, but could call this main number. Townsend depo. at 15, 25. Additionally, employees placed through Kelly could call in to Kelly. Townsend depo. at 25, 31. However, the plaintiff did not call Kelly to report she was serving on a jury until December 13, 2007. Plaintiff depo. at 66-67, 68.

On December 13th the plaintiff called Kelly to see if they needed a copy of her jury service document or if she should just give it to Federal-Mogul, and she was told she had been let go. Plaintiff depo. at 77, 79; Armour depo. at 25. The plaintiff's assignment to Federal-Mogul was terminated for not calling her supervisor's cell phone, as required. Butler affidavit, ¶ 11; Armour depo. at 27; Townsend depo. at 35.

Defendant Kelly has no authority to make one of its customers retain any particular temporary employee it places. Brenda Armour affidavit, ¶ 2. Although the plaintiff asserts that Kelly did not offer her any assignments after Federal-Mogul dismissed her, she admits that Kelly contacted her about other jobs, but either they were too far away, or not the right hours. Plaintiff depo. at 97, 101-104, 121-124. Kelly eventually reassigned plaintiff, but she quit on her second day because one of her children had immediate medical needs. Armour affidavit, ¶ 18; plaintiff depo. at 111-112, 116-117. *See* also Kelly exhibits 16 and 17, submitted as doc. 30-7.

The Federal-Mogul employee handbook does states that contract employees will be excused for jury duty with proper documentation, but not paid for that time. Exhibit 3 to Grinage depo., at 00014.

## II.  Summary Judgment Standard

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986); *Reeves v. C.H. Robinson Worldwide, Inc.*, 525 F .3d 1139, 1143 (11th Cir.2008). The facts, and any reasonable inferences therfrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578,

1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). The evidence must be such that a reasonable jury could find in the non-moving party's favor. *Fickling v. United States*, 507 F.3d 1302, 1304 (11th Cir.2007). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.,* 419 F.3d 1169, 1181 (11th Cir.2005).

### III. Legal Analysis

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.,* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.,* 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers each of the plaintiff's claims.

*A. Intentional Infliction of Emotional Distress:*

The defendants' motions are due to be granted on plaintiff's claim for intentional infliction of emotional distress. The facts of this case are not within the parameters set forth for such a cause of action by the Alabama Supreme Court. See e.g., *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993). The Alabama Supreme Court has repeatedly held that it has found a jury question on an

this type of claim only in three categories: 1) cases having to do with wrongful conduct in the context of family burials, 2) a case where insurance agents employed heavy-handed, barbaric means in attempting to coerce the insured into settling an insurance claim, and 3) a case involving egregious sexual harassment. *Id.* (citations omitted). The court shall therefore grant the defendants' motions for summary judgment on this count of the complaint.

### *B. Retaliation*

Under Alabama law, to prevail on a claim of retaliation for jury service, the plaintiff must establish that she was terminated solely because she served on jury duty. Ala.Code § 12-16-8.1(a). The statute was "intended to prohibit an employer from discharging an employee *solely* because the employee was absent from work because he or she was called for jury duty" (emphasis in original). *Alabama Power Co. v. Aldridge,* 854 So.2d 554, 567 (Ala.2002), citing *Norfolk Southern Ry. Co. v. Johnson*, 740 So.2d 392, 396 (Ala.1999). In *Norfolk Southern*, the Alabama Supreme Court set forth the standard courts should apply when considering such a claim:

> an employee may establish a prima facie case of retaliatory discharge, in a case filed pursuant to § 12-16-8.1, by presenting substantial evidence suggesting that he was discharged "solely" because he "served" on a jury. If the employee establishes a prima facie case, then the burden shifts to the employer to come forward with evidence showing that the employee was terminated for a legitimate reason. If the employer satisfies this burden, then the burden shifts back to the employee to show that the proffered reason is a pretext.

*Norfolk Southern Ry. Co.*, 740 So.2d at 398. See also *Alabama Power Co.,* 854 So.2d at 567.

### 1. Defendant Kelly

Defendant Kelly never terminated the plaintiff, hence the plaintiff cannot establish this defendant "discharged" her "solely" because she served on a jury, as required by Ala.Code § 12-16-8.1(a). Although the plaintiff did not like the jobs Kelly found for her, Kelly did offer the plaintiff positions after her termination from Federal-Mogul. Plaintiff depo. at 101-104, 121-124; see also exhibits 16-18 to plaintiff depo. The plaintiff argues that the fact that Kelly did not place the plaintiff in a position until after this suit was filed is evidence of retaliation, but the evidence does not support this conclusion.

Kelly did try to place the plaintiff, but the plaintiff only wanted third shift jobs and she wanted them within a close distance of her home. Plaintiff depo. at 118-121. She ruled out several positions because they were either too far or not the hours she wanted. Plaintiff depo. at 100, 111-112; exhibits 16 and 17 to plaintiff depo. Kelly had no other positions to fill from the time the plaintiff was terminated by Federal-Mogul until June or July of the following year. Armour depo. at 14-16. Although the plaintiff's work shift requirements were due to issues with childcare, that does not make Kelly's failure to accommodate plaintiff's requirements retaliatory.

The plaintiff speculates that Kelly did not find any positions for her prior to June 2008 based on retaliation, but in the face of undisputed testimony Kelly had no positions to offer her, this speculation does not create a genuine issue of material fact. Such "unsupported speculation ... does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005). Because the plaintiff has not established that Kelly ever terminated the plaintiff, Kelly's motion for summary judgment on this claim is due to be granted.

### 2. Federal-Mogul

Federal-Mogul asserts the plaintiff's "assignment ended" because she failed to call or show for three days in a row.  Thus, this defendant argues, it did not discharge her "solely because she served on a jury."  The plaintiff has established that  her discharge occurred while she was absent from work due to serving on a jury, and before her jury service concluded.

The evidence before the court establishes that the plaintiff was specifically instructed to call her supervisor's cell phone each day she was on jury duty; that she was provided that phone number; and that she lost that phone number.  The evidence further establishes that the plaintiff dialed a "call-in" number that was posted on the

employee bulletin board and that the first two days she was absent she left messages. The parties do not dispute that the third day the plaintiff was absent she did not leave a message. Additionally, the plaintiff does not dispute that Butler never received any messages from her.

Assuming the court found that the plaintiff set forth a prima facie case that she was terminated solely because she was on jury duty, Federal-Mogul has set forth evidence that it had a legitimate reason to terminate the plaintiff, namely that she failed to call in everyday as required. It asserts her termination was not related to her jury service. The burden thus shifts back to the plaintiff to establish that Federal-Mogul's explanation was pretextual. The plaintiff asserts she satisfied this burden through evidence that the handbook states jury service will be excused upon proper documentation, and through evidence that the number the plaintiff called was posted and listed as a means by which to notify a supervisor that the plaintiff's jury service was continuing.

Federal-Mogul responds that its call in policy and jury duty policy are separate policies and both have to be followed. According to Federal-Mogul, the purpose of the jury service policy is so that absences will not count against employee serving on a jury, but does not retroactively excuse the failure to call in. Federal-Mogul asserts it did not know plaintiff was serving on a jury, as opposed to summoned for jury

service.[4]  Federal-Mogul argues that it was never given the opportunity to accommodate the plaintiff's jury service, because it never knew she was selected for a jury.  *Id.*, at 8.  Additionally, the plaintiff failed to rebut Federal-Mogul's assertion that she failed to notify *her supervisor*, as she had been instructed, and failed to rebut evidence that she did not call in each of the days she was absent.  The plaintiff does not dispute that Grinage did not know the plaintiff's whereabouts and asked that a replacement for plaintiff be obtained.

In light of the foregoing, the court is of the opinion that no genuine issue of material fact exists for a jury to resolve.  The court shall therefore grant Federal-Mogul's motion by separate order.

**DONE** and **ORDERED** this the 22nd day of December, 2008.

*/s/ Inge Prytz Johnson*
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

[4] Federal-Mogul asserts it should not have to assume that people summoned to jury duty will be selected to serve on a jury and out all week, which is tantamount to a "free pass to be out all week, even if she was released early or never selected..."  Defendant's reply (doc. 36) at 4.